UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CYNTHIA A. LAWSON,

        Plaintiff,                      CIVIL ACTION NO. 14-cv-11508

        v.                                DISTRICT JUDGE PATRICK J. DUGGAN

COMMISSIONER OF                MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Cynthia Lawson seeks judicial review of Defendant Commissioner of Social Security's determination that she is not entitled to social security benefits for her physical impairments under 42 U.S.C. § 405(g). (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 17) and Defendant's Motion for Summary Judgment (docket no. 19). The motions have been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Docket no. 5.) The Court has reviewed the pleadings, dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), and issues this Report and Recommendation.

## I.   RECOMMENDATION

It is recommended that Plaintiff's Motion for Summary Judgment (docket no. 17) be DENIED and that Defendant's Motion for Summary Judgment (docket no. 19) be GRANTED.

## II.   PROCEDURAL HISTORY

Plaintiff filed an application for supplemental security income with a protective filing date of September 27, 2010, alleging that she has been disabled since March 31, 2007, due to rheumatoid arthritis and severe migraines. (TR 103-08, 131.) The Social Security Administration denied Plaintiff's claims on January 24, 2011, and Plaintiff requested a *de novo* hearing. (TR 62-65, 66-68.) On December 14, 2011, Plaintiff appeared with a representative and testified at the hearing before Administrative Law Judge (ALJ) Martha Gasparovich. (TR 28-50.) At the hearing, Plaintiff amended her alleged onset date to September 27, 2010, the date of her application. (TR 32.) In an April 4, 2012 decision, the ALJ found that Plaintiff was not entitled to benefits because she was capable of performing a significant number of jobs in the national economy. (TR 15-23.) The Appeals Council declined to review the ALJ's decision (TR 3-8), and Plaintiff commenced this action for judicial review. The parties then filed cross motions for summary judgment, which are currently before the Court.

## III.   HEARING TESTIMONY AND MEDICAL EVIDENCE

### A.   Plaintiff's Testimony

Plaintiff was 52 years old at the time of the administrative hearing and 51 years old on the application date. (TR 32-33, 21.) Plaintiff testified that she graduated from high school, attended community college for two semesters, and attended cosmetology school. (TR 33.) She explained that she received a certificate from cosmetology school, but has never been licensed due to headaches and depression. (TR 33, 44.) Plaintiff told the ALJ that she previously worked in a beauty salon answering telephones and straightening shelves. (TR 33-34.) She admitted to also working for her husband's business. (TR 44.) At the time of the hearing, Plaintiff worked

part-time, one to two days per week, on her "good days," at a church handling paperwork and answering the telephones. (TR 37-38.)

Plaintiff testified that she was disabled and unable to work because she often suffered from severe migraines that affected her ability to focus and sometimes caused her to vomit and lie in bed for hours. (TR 34.) Plaintiff explained that she had been having the migraines for ten years or more and that they occurred about twice per week and lasted between two and six hours. (TR 34.) Plaintiff admitted that at times, the headaches would cause her to lie in bed twice a week. (TR 37.) Plaintiff testified that she had been treating with the Michigan Institute for Neurological Disorders since the year 2000, and had been going there about twice per year to have a brain scan. (TR 41-42.) Plaintiff admitted that she stopped treating there on a regular basis when she lost her insurance in 2009. (TR 42.) She added that she took Treximet at the onset of a migraine and Zonisamide nightly as a preventative measure. (TR 35.) Plaintiff told the ALJ that the Treximet didn't work as well as the medication she had been taking previously but could no longer afford. (TR 35-36.) Plaintiff also told the ALJ that she luckily hadn't experienced a lot of headaches on days she was scheduled to work at the church. (TR 38.)

Plaintiff testified that she could stand for twenty to twenty-five minutes at a time due to back trouble, headaches, and joint problems in her fingers. (TR 36.) She also testified that she could sit for about twenty to twenty-five minutes at a time and that she could walk slowly for about a block. (TR 36-37.) As far as lifting and carrying, Plaintiff said that she wasn't supposed to lift at all, but that she could lift a laundry basket and lift a gallon of milk in each hand. (TR 37.) Plaintiff told the ALJ that she would wake up about once per night to go to the bathroom and that it would take her about twenty-five to thirty minutes to fall back to sleep. (TR 38.) Plaintiff admitted that she would nap for about an hour three times per week. (TR 38-39.)

Plaintiff testified that she liked to read and that she used to enjoy sewing and mountain biking. (TR 39.) She said that she had a driver's license and drove every day, only experiencing difficulty if she had to sit for a long time. (TR 39.) Plaintiff explained that she occasionally did some light cleaning, but not heavy cleaning. (TR 40.) She told the ALJ that she rarely had difficulty taking care of her personal needs and was able to cook for herself and go out for food. (TR 40.)

### B. Vocational Expert's Testimony

First, the ALJ asked the Vocational Expert (VE) whether a hypothetical fifty-two-year-old individual with the same education and work experience as Plaintiff, who had the ability to stand and walk no more than six hours in an eight-hour day; could lift no more than twenty pounds occasionally and ten pounds frequently; would be unable to push or pull with any of the extremities; and could only squat, crawl, kneel, climb, balance, bend, or stoop occasionally would be able to perform any work existing in the national economy. (TR 46.) The VE responded that such an individual would be able to perform work as an office cleaner, for which there were 5,000 jobs available in southeast Michigan and double that amount statewide; a gate attendant, for which there were 2,000 jobs available in southeast Michigan and double that amount in the state; and an assembler, for which there were 3,000 available jobs in southeast Michigan and 6,000 jobs available in the state. (TR 46-47.)

The ALJ then asked the VE whether those jobs would still be available if the individual was limited to performing simple, routine tasks in a nonproduction-pace setting due to some level of chronic pain. (TR 47.) The VE responded that the number of assembler jobs would be reduced to 1,500, but the number of available jobs for the other two positions would remain the same. (TR 47.) Next, the ALJ asked the VE whether the second hypothetical person's ability to

perform the listed jobs would be affected if she needed to lie down and rest at least once per day during an unscheduled break of at least thirty to forty-five minutes.  (TR 47.)  The VE stated that such a limitation would preclude employment for that individual.  (TR 47.)  Finally, the ALJ asked the VE whether the first hypothetical individual's ability to perform the listed jobs would be affected if she would be absent from the workplace approximately two times per week.  (TR 47.)  The VE responded that employment would be precluded.  (TR 47.)

### C. Medical Evidence

The undersigned has thoroughly reviewed Plaintiff's medical record.  In lieu of summarizing Plaintiff's medical history, the undersigned will make references and citations to the record as necessary in response to the parties' arguments.

## IV. ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date of September 27, 2010 and that Plaintiff suffered from the following severe impairments: migraine headaches, degenerative disc disease, and cholelithiasis.  (TR 17.)  The ALJ also found that Plaintiff's alleged rheumatoid arthritis was not medically determinable.  (TR 17-18.)  Next, the ALJ found that Plaintiff's impairments did not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (TR 18.)  The ALJ then found that Plaintiff had the following residual functional capacity (RFC):

> [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she can stand and walk no more than six hours in an eight-hour day.  She can lift no more than twenty pounds occasionally and ten pounds frequently.  The claimant is unable to push or pull with any of her extremities.  She can only occasionally squat, crawl, kneel, climb, balance, bend, or stoop.  All work must be simple routine tasks in a non-production setting, as a result of some level of chronic pain.

(TR 18-21.) Subsequently, in reliance on the VE's testimony, the ALJ determined that Plaintiff was capable of performing a significant number of jobs in the national economy. (TR 22.) Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act at any time since September 27, 2010, the date the application was filed. (TR 22-23.)

## V. LAW AND ANALYSIS

### A. Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388,

389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

### B. Framework for Social Security Determinations

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1) Plaintiff was not presently engaged in substantial gainful employment; and

(2) Plaintiff suffered from a severe impairment; and

(3) the impairment met or was medically equal to a "listed impairment;" or

(4) Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

**C.     Analysis**

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)).  Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing.  42 U.S.C. § 405(g).  Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).

Plaintiff asserts that this matter should be reversed and remanded under sentence four because the ALJ (1) "failed to properly weigh the evidence of record and substituted h[er] own lay opinion for medical professionals" and (2) "failed to make an accurate RFC finding and therefore erroneously found work at Step Five."  (Docket no. 17 at 9-18.)

*1.     The ALJ's Assessment of the Medical Evidence*

It is well settled that the opinions of treating physicians are generally accorded substantial deference.  In fact, the ALJ must give a treating physician's opinion complete deference if it is supported by clinical and laboratory diagnostic evidence and it is not inconsistent with the other substantial evidence in the record.  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  When an ALJ determines that a treating source's medical opinion is not controlling, he must determine how much weight to assign that opinion in light of several factors:  (1) length of the treatment

relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) supportability of the opinion; (4) consistency of the opinion with the record as a whole; (5) specialization of the treating source; and (6) other factors. 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).

There is no *per se* rule that requires an articulation of each of the six regulatory factors listed in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6). *Norris v. Comm'r of Soc. Sec.*, No. 11-CV-11974, 2012 WL 3584664, at *5 (E.D. Mich. Aug. 20, 2012) (citing *Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010)). An ALJ's failure to discuss the requisite factors may constitute harmless error (1) if "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it;" (2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion;" or (3) "where the Commissioner has met the goal of [§ 1527(c)]—the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation." *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470 (6th Cir. 2006) (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004)).

The Commissioner requires its ALJs to "always give good reasons in [their] notice of determination or decision for the weight [they] give [a] treating source's opinion." 20 C.F.R.§§ 404.1527(c)(2), 416.927(c)(2). Those good reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Wilson*, 378 F.3d at 544 (quoting SSR 96-2p, 1996 WL 374188, at *5 (1996)). The district court should not hesitate to remand when the Commissioner has failed to identify the weight assigned to a treating physician's opinion and provide good reasons for that

weight. *See Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011) ("This Court has made clear that '[w]e do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion.") (citing *Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir.2009)).

On December 6, 2011, Plaintiff's treating physician, Dr. Racheed Atassi, M.D., completed a physical residual functional capacity questionnaire, in which he indicated that Plaintiff suffers from chronic joint and lower back pain, has been diagnosed with rheumatoid arthritis and migraines, and has a prognosis of chronic osteopenia. (TR 379-83.) Dr. Atassi opined that Plaintiff's impairments were expected to last at least twelve months and that her pain would frequently affect her attention and concentration when performing even simple work-related tasks. He also opined that during an eight-hour workday, Plaintiff would need to walk every twenty minutes for five minutes at a time and would sometimes need to take unscheduled breaks throughout the day. Dr. Atassi further opined that Plaintiff could occasionally look up or down, turn her head to the left or right, hold her head in a static position, or twist; could rarely stoop, bend, crouch, or squat; and could never lift or carry any weight in a competitive work situation or climb stairs or ladders; but did not have significant limitations with regard to reaching, handling, or fingering. Dr. Atassi concluded that Plaintiff would miss about four days of work per month due to her impairments.

The ALJ summarized Dr. Atassi's treatment notes, discussed Dr. Atassi's opinion, and assigned his opinion some weight. (TR 19-21.) She reasoned that although Dr. Atassi had insight into Plaintiff's condition as Plaintiff's treating physician, the degree of limitations

asserted by Dr. Atassi in his opinion was not supported by the medical evidence as a whole. (TR 21.) The ALJ expounded that "the treatment notes reflect[ed] relatively few dramatic objective findings to support such extreme restrictions." (TR 21.)

On January 6, 2011, Dr. Cynthia Shelby-Lane, M.D. performed a consultative physical examination of Plaintiff. (TR 207-15.) Dr. Shelby-Lane noted that Plaintiff had a history of rheumatoid arthritis with chronic bone and joint pain, for which she was taking medication. (TR 209.) Dr. Shelby-Lane also noted that Plaintiff had a history of migraine headaches, which, according to Plaintiff, occurred at least twice a week, and that Plaintiff was treating those headaches with medication. (TR 209.) Dr. Shelby-Lane's examination revealed that Plaintiff was able to get on and off the examination table without difficulty, was able to squat to ninety percent of the distance and recover while holding the table, was able to bend to seventy percent of the distance and recover, her gross and fine dexterity appeared to be intact, and Plaintiff's reflexes and the range of motion in her joints was in the normal range. (TR 209, 211-13.) Based on her exam of Plaintiff, Dr. Shelby-Lane opined that Plaintiff may have difficulty with repetitive and heavy lifting, bending, pushing, and pulling, and that she would need ongoing care for her headaches. (TR 209.)

The ALJ summarized Dr. Shelby-Lane's examination report and opinion and assigned the opinion some weight. (TR 20.) The ALJ based her assessment of Dr. Shelby-Lane's opinion on the fact that Dr. Shelby-Lane personally examined Plaintiff and on a finding that Dr. Shelby-Lane's opinion was generally consistent with the evidence. In giving Plaintiff the benefit of the doubt, the ALJ limited her assessment of Dr. Shelby-Lane's opinion to "some weight" and included restrictions in addition to those listed by Dr. Shelby-Lane in Plaintiff's RFC. (TR 20.)

Plaintiff challenges the weight that the ALJ assigned to the medical opinions of Drs. Atassi and Shelby-Lane. (Docket no. 17 at 12.) Specifically, Plaintiff asserts that by failing to give Dr. Atassi's opinion full weight and by failing to "give full weight to the only other valid opinion in the record," Dr. Shelby-Lane's opinion, the ALJ improperly substituted her own opinions regarding Plaintiff's limitations for those of the medical providers when formulating the RFC. (*Id*. at 12-13.) Plaintiff's argument fails on multiple grounds. First, a treating physician's opinion is not entitled to controlling weight if it is inconsistent with the other substantial record evidence. 20 C.F.R. § 416.927(c)(2). Here, the ALJ properly discounted Dr. Atassi's opinion for that very reason. Defendant provides an example of such an inconsistency: Dr. Atassi opined that Plaintiff could never lift even minimal weight (TR 382); however, Plaintiff testified that she was able to lift a laundry basket and lift a gallon of milk in each hand (TR 37). (Docket no. 19 at 10.)

Dr. Shelby-Lane's opinion is also not entitled to controlling weight, even though the ALJ found that it was generally consistent with the evidence, because she was an examining physician and not a treating physician. Moreover, in according only some weight to Dr. Shelby-Lane's opinion and including functional limitations in addition to those set forth by Dr. Shelby-Lane in Plaintiff's RFC, the ALJ was not substituting her own opinions for those of Dr. Shelby-Lane but was "giving [Plaintiff] the benefit of the doubt" based on her assessment of Plaintiff's credibility. As further discussed below, the ALJ's credibility determination is entitled to substantial deference. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).

Plaintiff also sets forth an ancillary argument that the ALJ did not build a logical bridge between the evidence and her conclusion. (Docket no. 17 at 13.) Plaintiff, however, makes this argument in a general, conclusory fashion and fails to support this argument with any factual

substance or legal analysis. Without more, Plaintiff's argument lacks merit. For the reasons stated above, the undersigned finds that the ALJ properly assessed the medical evidence and provided good reasons for assigning some weight to Dr. Atassi's opinion; those reasons are supported by the evidence of record and are sufficiently specific to clarify the reasons for that weight. Plaintiff's Motion should be denied with regard to this issue.

### 2. *The ALJ's Assessment of Plaintiff's Credibility*

Plaintiff argues that the record demonstrates that her symptoms would preclude her from performing the level of work set forth in her RFC. (Docket no. 17 at 16.) In making this argument, Plaintiff indirectly challenges the ALJ's assessment of Plaintiff's credibility because much of the record evidence cited by Plaintiff in support of this argument consists of Plaintiff's subjective complaints made at her appointments with Drs. Atassi and Shelby-Lane. (*Id.*) "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Comm'r*, 127 F.3d 525, 531 (6th Cir. 1997). But credibility assessments are not insulated from judicial review. Despite the deference that is due, such a determination must nevertheless be supported by substantial evidence. *Id.* An ALJ's credibility determination must contain "specific reasons . . . supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96–7p. "It is not sufficient to make a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'" *Id.* "[T]he adjudicator may find all, only some, or none of an individual's allegations to be credible" and may also find the statements credible to a certain degree. *Id.*

Further, to the extent that the ALJ found that Plaintiff's statements are not substantiated by the objective medical evidence in the record, the Regulations explicitly provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work . . . solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. § 416.929(c)(2). The ALJ must consider: (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of the claimant's pain, (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms, (5) treatment, other than medication, for pain relief, (6) any measures used to relieve the pain, and (7) functional limitations and restrictions due to the pain. *See* 20 C.F.R. § 416.929(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994) (applying these factors).

Here, the ALJ discussed Plaintiff's hearing testimony as well as Plaintiff's other subjective complaints (including those cited by Plaintiff in her brief) throughout her decision and found that Plaintiff's allegations were less than credible. (TR 18-21.) In making this determination, the ALJ reasoned that Plaintiff's complaints were inconsistent with the medical evidence. (TR 21.) Specifically, the ALJ noted that there was little in the record to support Plaintiff's arthritis claims, the objective findings did not substantiate the degree of pain and other symptoms alleged by Plaintiff, and there was no documentation to support the alleged frequency of Plaintiff's migraines.

The ALJ also considered the treatment that Plaintiff was undergoing for her alleged impairments, which primarily consisted of medication, and reasoned that it was relatively conservative and "incongruent with the extreme limitations" asserted by Plaintiff. Additionally,

14

the ALJ pointed out that Plaintiff was able to perform a variety of daily activities in spite of her complaints, such as shopping, laundry, driving a car, and preparing meals. The ALJ also highlighted Plaintiff's ability to perform office work a church part-time. Finally, the ALJ noted Plaintiff's sporadic work history and ultimately questioned whether Plaintiff's medical impairments were actually the cause of Plaintiff's ongoing unemployment.

As discussed above, the ALJ provided specific reasons for discounting Plaintiff's credibility in her decision, many of which apply the factors set forth in 20 C.F.R. § 416.929(c)(3). Thus, the ALJ's decision is sufficiently specific to make clear to Plaintiff and to the Court the weight that she gave to Plaintiff's statements and the reasons for that weight. The ALJ's assessment of Plaintiff's credibility is supported by substantial evidence; Plaintiff's Motion should be denied in this regard.

### 3. The ALJ's RFC Assessment and Hypothetical Questions to the VE

The RFC assessment is the Commissioner's ultimate finding about the claimant's ability to perform work-related activities. Social Security Ruling (SSR) 96-5p, 1996 WL 374183, at *5. It is defined as the most, not the least, the claimant can do despite his impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a). The ALJ derives the RFC after considering the medical and other relevant evidence in the record. *Id*. He must support the RFC by including a narrative discussion describing how the evidence supports his conclusions and providing citations to specific medical facts and nonmedical evidence. SSR 96-8p, 1996 WL 374184, at *7. In determining the RFC, the ALJ must discuss the claimant's ability to perform sustained work activities in an ordinary setting on a regular and continuing basis. *Id.* The ALJ may adopt an opinion of a medical or nonmedical source in whole or in part if he finds that it is supported by and not inconsistent with the other substantial evidence of record. However, at all times the

15

ultimate responsibility for fashioning the RFC rests with the ALJ, who has an obligation to determine the RFC based on the evidence he finds credible.

Plaintiff argues that the ALJ's determination that Plaintiff is capable of performing light work is not supported by substantial evidence. (Docket no. 17 at 15.) According to Plaintiff, the medical evidence demonstrates that Plaintiff is unable to perform even sedentary work. A finding that Plaintiff is unable to perform sedentary work, however, would necessitate a finding of disability, and it is well settled that the ultimate issue of disability is reserved to the Commissioner. *Kidd v. Comm'r*, 283 F. App'x 336, 341 (6th Cir. 2008). As set forth above, the ALJ's RFC assessment included those limitations that the ALJ found to be credible and supported by substantial evidence in the record. The ALJ then presented all of the limitations of the RFC in her hypothetical questions to the VE, and the VE testified that there were jobs available for a person with these limitations, which the VE cited in detail. The ALJ properly relied on the VE's testimony to find that there are significant numbers of jobs available which Plaintiff can perform. The ALJ's decision at step five is based on substantial evidence.

## VI.     CONCLUSION

For the reasons stated herein, the Court should DENY Plaintiff's Motion for Summary Judgment (docket no. 17) and GRANT Defendant's Motion for Summary Judgment (docket no. 19).

## REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections

constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: June 12, 2015                     s/ Mona K. Majzoub
                                          MONA K. MAJZOUB
                                          UNITED STATES MAGISTRATE JUDGE

### PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: June 12, 2015                     s/ Lisa C. Bartlett
                                          Case Manager